UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUMIT SINGH CHOUDHARY,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | No. 1:26-cv-01770-DJC-CKD<br><br><br>ORDER |

Before the Court is a Petition for Writ of Habeas Corpus (Pet. (ECF No. 1)) and a Motion for Temporary Restraining Order (Mot. (ECF No. 2)) filed by a noncitizen who entered the United States in January of 2025 and has been detained by Immigration and Customs Enforcement ("ICE") for the twelve months since pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). (Pet. ¶ 22; Opp'n (ECF No. 9) at 2.)  During this time, Petitioner has never received a bond hearing nor any other individualized assessment of whether he presents a risk of flight or danger to the community.

Petitioner raises claims similar to ones this Court has already addressed.  This Court has previously joined other districts in concluding that the unreasonably prolonged detention of individuals such as Petitioner under section 1225(b) without a bond hearing can violate the Due Process Clause.  *See Mohammed v. Warden of Cal. City Det. Ctr.*, No. 1:26-cv-00118-DJC-CSK, 2026 WL 192368 (E.D. Cal. Jan. 26, 2026);

1

*see also Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-00098-SAB, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) (explaining that "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will–at some point–violate the right to due process") (quoting *Martinez v. Clark*, No. 2:18-cv-01669-RAJ, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, No. 2:18-cv-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019)).

Petitioner argues his twelve-month detention without any individualized assessment violates the Due Process Clause. (Pet. ¶ 49; Mot. at 9–10.) To determine if Petitioner's due process rights have been violated, the Court must answer two questions: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025).

Petitioner has a clear liberty interest in securing his freedom from detention. "Freedom from imprisonment–from government custody, detention, or other forms of physical restraint–lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner was initially detained in January 2025 and has remained in custody for the twelve months since. (Pet. ¶ 59.) Further, as an asylum officer has found Petitioner has a credible fear of persecution, he is not subject to expedited removal but rather faces indefinitely prolonged detention while his asylum case is processed. (Opp'n at 2; *see also* 8 U.S.C. § 1225(b)(1)(B)(ii).) His case will first be heard by an Immigration Judge, then by the Board of Immigration Appeals, followed by the Ninth Circuit, provided either party seeks further review. As Petitioner has been deprived of the liberty secured by the Due Process Clause and

////

this deprivation will continue for a protracted and indefinite period, Petitioner has established his liberty interest.  *See Zadvydas*, 533 U.S. at 690, 693.

Having established that Petitioner has a protected liberty interest, the Court must determine whether Petitioner is now due process under the Constitution.  Courts in this Circuit weigh the following factors to ascertain when prolonged detention violates the Due Process Clause: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal."  *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019); *see, e.g.*, *Sandesh v. LaRose*, No. 3:26-cv-00846-JES-DDL, 2026 WL 622690, at *3 (S.D. Cal. Mar. 5, 2026) (finding "it most appropriate to apply the *Banda* test to Petitioner's detention here under § 1225(b), as other courts within this district have done in the past" and collecting cases).

First, the length of detention, which is "the most important factor," weighs in Petitioner's favor as Petitioner has been detained for twelve months.  (Pet. ¶ 59; *Martinez*, 2019 WL 5968089, at *9.)  That length of time aligns with that other courts in this Circuit have found sufficiently prolonged to warrant relief.  *See, e.g.*, *Lopez v. Garland*, 631 F. Supp. 3d 870, 879–80 (finding fact that detention had spanned twelve months weighed in favor of granting bond hearing).

The second factor also weighs in Petitioner's favor.  This factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals."  *Martinez*, 2019 WL 5968089, at *9. Petitioner's detention is likely to endure indefinitely while determinations about Petitioner's asylum claim and removability are made and appealed.  *Id.*  (finding likely length of future detention absent judicial intervention weighed in favor of granting a bond hearing even where Petitioner had already received a removal order and filed

3

an appeal).  Thus, this factor weighs in Petitioner's favor.  *Loba L.M. v. Andrews*, No. 1:25-cv-00611-JLT-SAB-HC, 2025 WL 2939178, at *6 (E.D. Cal. Oct. 16, 2025), *report and recommendation adopted*, No. 1:25-cv-00611-JLT-SAB, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025) (finding that "[a]lthough future events are difficult to predict, the Court nevertheless finds that the pending appeal before the BIA and possible remand to the immigration court for further proceedings or possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner"); *Bojorge-Sequeira v. Geo Grp. Inc.*, No. 2:25-cv-01807-KKE-GJL, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted*, No. 2:25-cv-01807-KKE-GJL, 2026 WL 285657 (W.D. Wash. Feb. 3, 2026) (finding this factor weighed in favor of petitioner who had appealed the Immigration Judge's decision to the BIA).

The third factor also weighs in Petitioner's favor.  Petitioner asserts that he has been unable to access adequate treatment for the multiple mental health conditions he suffers from while detained.  (*See* Pet. ¶ 32.)  Specifically, Petitioner asserts, and the Government does not contest, that Petitioner "has experienced difficulty accessing mental health treatment while in detention due to procedural hurdles at the facility and language barriers related to his Dogri language." (*Id.*)  This factor therefore leans in Petitioner's favor.

The fourth and fifth factors favor Petitioner.  Respondents present no evidence to dispute Petitioner's assertion that the "Immigration Court has continued his case multiple times through no fault of Petitioner."  (Mot. at 5; *see also* Pet. ¶ 60; *see generally* Opp'n.)  Respondents do not assert or supply any evidence indicating that Petitioner has unreasonably or in bad faith delayed his own removal proceedings. *See Martinez*, 2019 WL 5968089, at *10 (distinguishing between "legitimate defenses" to removal, "which cannot undermine [a petitioner's] claim that detention has become unreasonable" and "dilatory" or "bad faith" tactics to "deliberately slow the proceedings").  Rather, Respondents claim the delay "is seemingly due to transfer

between 'three different detention facilities.'" (Opp'n at 6.)[1]  However, if the Government's decision to transfer Petitioner between facilities has delayed adjudication of his asylum claims, such delay is attributable to the Government, not Petitioner.  *See Martinez*, 2019 WL 5968089, at *10.

Respondents further assert "the delay in adjudicating Petitioner's asylum claim can also be attributed to Petitioner's suicide attempts while in immigration custody." (Opp'n at 6.)  Absent further explanation as to what effect these events had on Petitioner's case, this argument cuts solely against the Government as Petitioner attributes the deterioration of his mental health to his continued confinement.  (*See* Pet. ¶ 30–33.)  Petitioner suffers from post-traumatic stress disorder.  (*Id.* ¶ 29.) "Petitioner's symptoms, including his suicide attempts and suicidal ideations, are linked to the sexual assault he suffered at the hands of police officers in India." (*Id.* ¶ 30.)  His symptoms have "worsened during his continued immigration detention" as Petitioner has "expressed fear of being sexually assaulted while in ICE custody due to the sexual assault he experienced while previously detained by law enforcement in India." (*Id.* ¶ 31.)  It would defy logic to permit Petitioner's suicide attempts, triggered in part by his detention, to weigh in favor of continuing that detention.

Finally, the sixth factor is neutral as the Court lacks sufficient information to assess the likelihood that Petitioner's removal proceedings will result in a final order of removal and, therefore, declines to do so.  *See Sarr v. Scott*, 765 F. Supp. 3d 1091, 1109 (W.D. Wash. 2025) (declining to speculate as to the merits of Petitioner's appeal to the Ninth Circuit after the Immigration Judge and the BIA found Petitioner removable).

The balance of these factors supports Petitioner as five factors, including the most important one, the length of Petitioner's detention, weigh in Petitioner's favor while none weigh in the Government's favor.  Having established Petitioner has a

---

[1] While Respondents assert that Petitioner points to his transfer between facilities as the source of delay, the cited portion of the Petition does not do so.  (*See* Opp'n at 6 (citing Pet. ¶ 25).)

liberty interest and determined that his prolonged and indefinite detention entitles him to process, the Court grants Petitioner a bond hearing.

**CONCLUSION**

As Respondents invited the Court to rule on the merits of the underlying Petition (*see* Opp'n at 1) and Petitioner has not objected to this Court doing so, the Court does so here.  Accordingly, IT IS HEREBY ORDERED that:

1.  The Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED as to Count Two.[2]

2.  Within seven (7) days of this Order, Petitioner shall be afforded a constitutionally adequate bond hearing before an Immigration Judge. At this hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present.[3]  In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the Immigration Judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez*, 872 F.3d at 1000.

////

////

////

////

////

---

[2] In the interests of judicial economy, the Court declines to address the remaining grounds for relief in the Petition.

[3] This burden of proof has been regularly applied by courts reviewing similar cases, and the Court adopts the views of those courts here.  *See, e.g.*, *Pablo Sequen v. Albarran*, --- F.Supp.3d ----, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 14, 2025); *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *13–14 (E.D. Cal. Aug. 28, 2025); *Castellon v. Kaiser*, No. 1:25-cv-00968-JLT-EPG. 2025 WL 2373425, at *11–12 (E.D. Cal. Aug. 14, 2025).

3. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.  This Order resolves all pending motions.

IT IS SO ORDERED.

Dated:   **March 24, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – Choudhary26cv01770.merits

7